Please be seated. Thank you. Please call the first case. I, as well as the plaintiff, and all others in this case, staff, Inc. v. Workers' Compensation Comp'n. Court. You may proceed. May it please the Court. Counsel. Good morning, Your Honors. My name is Rachel Sinan. I represent Plaintiff Appellant, in this case, Elite Staffing. Now, this case stems from an uncontested knee injury and a disputed left hip injury that occurred on April 29, 2009, when defendant twisted his left knee unloading a truck. This matter was tried in 2010 pursuant to Section 19B of the Act, and the arbitrator found an aggravation of pre-existing osteoarthritis in the left hip that was related to the 2009 work accident. This resulted in past medical TTD benefits and prospective medical, a left hip arthroplasty. Now, the decision was affirmed by the commission and the circuit court. So, the main issue today before the Court is whether causal connection of the left hip is against the manifest weight of the evidence. And in determining causal connection, the arbitrator relied on the opinions of Dr. Stamalos, which no reasonable arbitrator should have relied on this evidence. So, let's start with those treatment records. Your Honor, for eight months following the accident, defendant saw treatment for the left knee. For eight months, not a single treating physician documented any complaints of left hip pain or treated defendant for the left hip. Now, there were PT records, handwritten notes that indicated that the defendant had thigh pain, hamstring pain, groin pain, and on very few occasions, there were references to posterior hip buttocks area pain. So, these complaints did not indicate that there was any kind of acute injury or an aggravation of a preexisting condition with the left hip. It wasn't until December of 2010, it wasn't until the defendant was seen by our IME physician, Dr. Kornblatt, that any medical doctor noted defendant's preexisting arthritis. So, imagine this. Following eight months of treatment for the left knee, Dr. Stamalos received Dr. Kornblatt's report. Magically, the left hip is now part of the diagnosis. It was so obvious, Your Honors, that Dr. Stamalos is backtracking. This results in a series of inconsistent opinions that raises serious doubts as to his credibility. At one point, he alludes to an acute injury, that the hip pain had been there all along, that it was masked by the knee pain. Now, if this was the case, it's interesting that there wasn't a single X-ray, MRI or any treatment regarding the left hip until Dr. Kornblatt's IME. Now, later, Dr. Stamalos opines that it was actually an aggravation of a preexisting arthritis caused by a change in gait with the therapy for the left knee. And this inconsistencies, actually the highlight of the inconsistencies comes from a September 2010 letter of medical necessity in which he states that the defendant's treating physician, a Dr. Hickenbottom, documented the hip involvement in his initial report. And that was a report from April 2009. That wasn't true. All that Dr. Hickenbottom diagnosed the defendant was with tendonitis of the left knee. That's documented in 105 of the record. Counsel, let me ask you, was there any evidence that the plaintiff had any previous injury or treatment to his left hip? That is not included in the record. All we have is the defendant's testimony at trial that he never had problems with his hip prior to the work accident. Now, but all of this, the defendant, it's really an issue of proofs. The defendant's testimony that he didn't have prior hip pain, on top of the interesting timeline of events, the inconsistencies, the factual inaccuracies with Dr. Stamoulos' opinions, all of that, does it equal to either an acute injury with the left hip or any kind of aggravation with preexisting arthritis? Well, he is symptomatic before the alleged accident. He has symptoms after that. He does seek therapy for that. Why can't the commission go with Dr. Stamoulos' opinion? Well, Your Honor, I think it's the point where he said symptoms after that. They weren't documented for eight months. We have no idea. It's the burden. But that's up to the commission. I mean, if they want to believe it, they believe it. We can't re-weigh this stuff. We don't. That's weight. You know, it's evidence. If the commission believes it, they believed it. I disagree, Your Honor. That's our burden. That's our standard. Correct. But I believe the manifest way the evidence puts into question Dr. Stamoulos' opinions and that no reasonable arbitrator should have ever concluded that this was related. For eight months, there was no documentation of any kind of hip pain. It's the burden was on the defendant in this case to prove causal connection. All right. Then in that regard, with Dr. Kornblatt, what was the basis for his causal connection opinion? That actually turns to my second point. Dr. Kornblatt, to suggest that Dr. Kornblatt was silent as to any aggravation of a preexisting injury, I believe twists his opinions to the point where it makes no sense. Well, let me just, I'll cut to the chase. I've searched the record, and I can't find a basis for his causal connection opinion. Can you point to it in the record? Well, Dr. Kornblatt had available all the treatment records. In terms of testimony or identified in a report, where does it say this is the basis of Dr. Kornblatt's causation opinion? I don't believe he specifically suggests the basis, but, I mean, his entire report as far as his review of the past treatment records, including his own examination, which included the examination of the hip, when he stated that the arthritis of the left hip is not work-related. Dr. Kornblatt created an umbrella. An aggravation of a preexisting condition fell underneath that umbrella. They wouldn't make any sense. Well, if the commission is having to decide between two opinions, two conflicting opinions, and Dr. Kornblatt doesn't provide a basis for his opinion, wouldn't that be a reasonable basis for the commission to go with Dr. Stamlos, who did provide a basis for his causal connection opinion? Your Honor, Dr. Stamlos' opinions, the basis for them, were inaccurate. He's backtracking. He's trying to cover up loose ends, saying, making inconsistent opinion arguments, whether it was acute or whether it was an aggravation, also relying on stating that there was evidence of hip pain in the priors, in the primary doctor's treating records that weren't there. Moreover, I think it's clear that there was a lack of documentation of any kind of hip pain, and that was the whole point for why there was no causal connection between the left hip and the work injury. For eight months, how could no one have treated the defendant? Perhaps there's an answer here that's being overlooked. I mean, you make a very logical point that why did eight months go by and there's no symptoms. Didn't Stamlos note that his hip was non-symptomatic prior to the accident, but his altered gait, as a result of the fall, causes hip to become symptomatic and disabled? So maybe during the period of the eight months, as you know, there's some other cases, people change their walk, their gait, because of an injury to one part of the body. So eight months later, as a direct result of the fall and the change of gait, it became symptomatic. So there's your answer. But it's interesting that he didn't initially say that. Dr. Stamlos believed at first that there was an acute injury, that it had been there all along, it was masked. It was a silent arthritic hip at one point, he stated. All right. So there's some conflict there. But it is a plausible theory, is it not, that because of the altered gait over a period of eight months, it could have caused symptoms in the hip? Isn't that a plausible theory? That is true, Your Honor. But I think what's important to note, though, is because of the suspect timeline, the inconsistencies, the factual inaccuracies, all of that, the manifest way of the evidence, nobody should have relied on these opinions in determining that. And that was almost the sole basis for Arbiter Hagan's opinions. With that, Your Honor, I believe all of this, the timeline, the inaccuracies, inconsistencies, that's the manifest way of the evidence. And for those reasons, this decision should be reversed and remanded. I'd be happy to entertain any other questions. I do have a question for you. In terms of your indication or your argument that there was this period without any complaints of hip pain, you noted, I believe it is in your opponent's brief, that the physical therapy notes document hip pain during that period of time. So doesn't that indicate that he was complaining of hip pain? Absolutely not. I think the defendant wants this Court to believe that the rehab notes, that the exterior buttocks area, that that somehow correlates to the same types of complaints of pain that would exist had there been either acute injury or aggravation of a pre-existing arthritic hip. It's not the same. And again, with all that information, how did it never show up in the diagnosis and assessment and impression all the way for eight months until Dr. Stamalos received Dr. Stamalos' report?   I don't believe that there is any evidence that there was hip pain or arthritis. So I find that to be very suspect, interesting and a little opportunistic. Okay. But you don't dispute that those references are there in the therapy notes as to hip pain. I don't believe they are a reference to hip pain. I think groin pain, thigh pain, hamstring pain does not correlate to hip pain. All right. Maybe we'll hear something else. I understand. Thank you, Your Honors. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honors. Counsel. Plaintiff, state in the brief. Your name? My name is Michael Casey. I apologize. Plaintiff, states in the brief, the first time that defendant noted experiencing pain anywhere in the hip area was on December 23, 2009, during his Section 12 examination with Dr. Kornblatt. That is simply not correct. Not correct. There are, I counted, 18 separate occasions in those therapy records where this is that line between where the leg attaches to the trunk of the body. I have pain here. I have pain on the lateral thigh. I have pain in the hamstring area back here. Was he ultimately diagnosed with a hernia? No. Was he diagnosed with some kind of a hamstring tear? No. Was he diagnosed with some kind of a left thigh muscle tear? No. What was he diagnosed with? He was diagnosed with a hip problem. Eighteen times in that record, there's references before he sees Dr. Stamoulos in July of 2009, before he sees Dr. Stamoulos, saying, I got pain here, here, and here. The commission, whose expertise is in looking at this stuff and saying, are those complaints suggestive of a hip problem? Say, yeah, we're convinced of it. We see it. What did Dr. Stamoulos do? To be clear, and in fairness here, was the word hip used in referencing these complaints to the therapist? There were, I think, two or three occasions when they said stiffness in the hip. But, no, the specific hip was never used by the petitioner. And if I talk about a hip, or most people talk about a hip, they talk about, what's your hip size? They talk about your this. This is not your hip. This is your pelvis. What is your hip? Your hip is that joint where the leg connects to the trunk of the body. The commission, that's their job. That's what their expertise is. They said, yeah, we find that those complaints are consistent with what ultimately was diagnosed here. Dr. Stamoulos said, it was initially thought that that was soft tissue complaints because it can be other things. And the hip can be confused with other, its diagnosis can be confused with other complaints in the body. The commission found, based upon the complaints, the history, the doctor's testimony, that, yes, there was a hip problem from the date of the accident, which, as Dr. Stamoulos said, was exacerbated again by the fact that this man had a severe knee injury, which ultimately required surgery, which then didn't make a very good recovery, which required additional problems in terms of his ability to walk on that knee, altered the gait, resulting in aggravation of this hip condition. The commission was the expert here. The commission has looked at the evidence and found that there was sufficient credible evidence to conclude that Petitioner sustained both knee and hip. For ten years before the date of this accident, this man jumped on and off of a truck, delivering newspapers throughout the city of Chicago. Was there any record that he had any problems before? Well, just his testimony and the fact that he did that for ten years. Thank you. Thank you, counsel. Counsel, you may reply. Nothing based on that, Your Honor. I'd be happy to entertain any questions. I don't believe there are any. Thank you. Thank you, counsel, both, for your arguments in this matter. This morning will be taken under advisement and a written disposition shall issue.